MICHAEL FEERER, Plaintiff-Appellee, *v.* NORTH RIVER INSURANCE CO., Defendant-Appellant.

First District (1st Division)     No. 80-1928

Opinion filed November 23, 1981.—Modified on denial of rehearing January 18, 1982.

Sandra Young, of Purcell & Wardrope, Chartered, of Chicago, for appellant.

Block, Levy & Becker, Chartered, of Chicago (Alvin R. Becker, of counsel), for appellee.

JUSTICE O'CONNOR delivered the opinion of the court:

In 1975 defendant, North River Insurance Company (insurer), issued an automobile liability insurance policy to plaintiff, Michael Feerer (insured). The policy contained an uninsured motorist provision and a provision for medical payment and personal injury protection. On February 26, 1976, insured was involved in a collision with an uninsured motorist. The insurer paid insured for damage to his vehicle under the collision coverage of the policy. The insured and insurer were unable to reach an agreement with regard to the uninsured motorist claim. In January 1978 the insured filed a demand for arbitration under the provisions of the policy. On February 6 and again on February 13, 1978, the insurer's attorney wrote letters to the insured's attorney requesting the insured to file a suit against the uninsured motorist to protect the insurer's subrogation rights against the running of the statute of limitations. The insured filed suit, and the insurer reimbursed him for the costs incurred. Insured and insurer prepared for arbitration of their dispute. On July 25, 1979, insured's attorney advised insurer's attorney that a default had been obtained against the uninsured motorist and that a prove-up was scheduled for September 12, 1979. On September 19, 1979, a $25,000 judgment was entered for insured against the uninsured motorist. The prove-up was uncontested. The insurer refused to pay this judgment and, on February 8, 1980, the insured filed this two-count declaratory judgment suit against the insurer for a declaration of his rights under the policy as to the uninsured motorist provision and the medical payment and personal injury protection provision. Count I sought to bind the insurer conclusively on the issues of liability and damages by reason of the default judgment and asked for a finding that arbitration was no longer necessary. Count II sought payment under the basic personal injury protection and medical payment coverages.

As to count I, the insured filed a motion for judgment on the pleadings and insurer filed a cross motion for summary judgment. On June 4, 1980, insured's motion was granted and judgment entered in his favor for $10,000 and costs; the insurer's motion for summary judgment was denied. Insured filed a motion for summary judgment on count II. On September 24, 1980, this motion was granted and judgment entered for the insured for $5967 and costs. The insurer appeals.

As to count I, the insurer contends that it was not bound by the default judgment against the uninsured motorist. We agree.

The letter of February 6, 1978, from the insurer's attorney to the insured's attorney stated:

"As you are aware, the statute of limitations on this particular matter will run on February 26, 1978. The insurance contract obligates the insured to protect the subrogation rights of the insurance company. Would you kindly advise me if a lawsuit has been filed against the uninsured motorist and if so, would you further advise me as to the court number of that suit. If, on the other hand, a lawsuit has not been filed, we would ask you at this time to prepare and timely file a lawsuit so as to protect the subrogation rights, if any, of the insurance company. Your costs in doing so will be reimbursed by the insurance company or, in the alternative, we will be happy to advance the costs to you prior to your filing the suit.

If you have any questions in this regard, please feel free to contact the undersigned.

Thank you very much for your anticipated cooperation."

This was followed by the letter of February 13, 1978, which stated:

"Pursuant to our phone conversation of February 7, 1978, you were to file a lawsuit in order to protect the subrogation rights of the insurance company. As I mentioned to you, the insurance company will reimburse you for the filing costs.

As the statute of limitations runs as of February 26, 1978, we ask that you do this immediately. As soon as the lawsuit has been filed we would appreciate a copy of the complaint which bears the court number.

Thank you for your cooperation in this matter."

In granting judgment on the pleadings as to count I, the trial court found that the above letters requesting the insured to file suit against the uninsured motorist to toll the statute of limitations to protect the insurer's subrogation rights constituted, under the following provision of the uninsured motorist coverage, consent to be bound by the default judgment:

"No judgment against any person or organization alleged to be

legally responsible for the bodily injury shall be conclusive as between the insured and the company, of the issues of liability of such person or organization or of the amount of damages to which the insured is legally entitled unless such judgment is entered pursuant to an action prosecuted by the insured with the written consent of the company."

In order for a judgment to be conclusive against the insurer under this provision, it must have been entered in an action which was prosecuted with its written consent. "Prosecute" means more than filing; it means carrying to a conclusion. Black's Law Dictionary 1099 (5th ed. 1979) contains the following:

"Prosecute. To follow up; to carry on an action or other judicial proceeding; to proceed against a person criminally. To 'prosecute' an action is not merely to commence it, but includes following it to an ultimate conclusion."

In *Service Lumber Co. v. Sumpter Valley Ry. Co.* (1915), 81 Ore. 32, 43, 152 P. 262, 264-65, it is said:

"While the word 'prosecute' may comprehend the commencement of an action, it includes more. To prosecute an action means not only to file a complaint and serve a summons, but it necessarily includes the carrying on of the action to some conclusion. The following cases, in addition to those cited in the original opinion, bear out the conclusion herein reached: Marryott v. Young, 33 N.J. Law, 336; Cohens v. Virginia, 19 U.S. (6 Wheat.) 264, 5 L. Ed. 257; Inhabitants of Knowlton Township v. Read, 11 N.J. Law, 320, State v. McDonald, 2 N.J. Law, 355, 360; Territory v. Nelson, 2 Wyo. 346; Inhabitants of Great Barrington v. Gibbons, 199 Mass. 527, 85 N.E. 737."

In *State v. Cardwell* (Mont. 1980), 609 P. 2d 1230, 1232, the court said:

"The terms 'prosecute' and 'prosecution' have long been defined in the judicial setting. As long ago as 1821, Chief Justice Marshall said, 'To commence a suit, is to demand something by the institution of process in a court of justice; and to prosecute the suit, is, according to the common acceptation of language, to continue the demand.' *Cohens v. Virginia* (1821), 6 Wheat. 264, 408, 19 U.S. 264, 408, 5 L. Ed. 257, 292."

■■ In our opinion, it is clear from the language of these letters of February 6 and 13, 1978, that the only consent given to the insured was to file a suit to prevent the bar of the statute of limitations as to the insurer's subrogation rights. It was not a consent to "prosecute" the suit, *i.e.*, to obtain any judgment, let alone a default judgment.

In addition, the reference in the policy provision to a "judgment" in an action "prosecuted" with the consent of the insurer makes it clear that

prosecution means more than merely filing a suit. The purpose of the "consent to be bound" clause is not to provide an alternative method to arbitration of a dispute between the insurer and the insured; but, as stated in *Allstate Insurance Co. v. Pietrosh* (1969), 85 Nev. 310, 454 P.2d 106, to preclude the binding effect on an insurer of a judgment entered against the uninsured tortfeasor, particularly when there has been no adversary determination of the uninsured motorist liability or the amount of damages suffered by the insured.

■■ An insurer will "not be required to pay damages in cases in which, because of default, the questions of liability and damages were never really litigated." *MFA Mutual Ins. Co. v. Bradshaw* (1968), 245 Ark. 95, 101, 431 S.W. 2d 252, 255.

In *Gulf American Fire & Casualty Co. v. Gowan* (1969), 283 Ala. 480, 218 So. 2d 688, it was held that the word "conclusive" in a clause identical with the clause before us was meant to mean that such judgment was "admissible" on the issue of whether the insured motorist was in fact liable for damages, but that such judgment was not final on the issue and could be refuted or contradicted by the insurer's proof. The insurer was free to offer other evidence as to liability of the uninsured motorist and damages incurred.

No Illinois case has been cited concerning this question.

Our research has discovered only one case which discussed what would be the likely result, under a clause identical with the clause before us, in a suit filed against the uninsured motorist at the request of the insurance company. In *Phoenix Insurance Co. v. Stuart* (1972), 289 Ala. 657, 665, 270 So. 2d 792, 799, the court said:

> "When Phoenix gave its written consent for Mrs. Stuart to file suit against the uninsured motorist, Holliman, it knew that in all likelihood such a suit would be disposed of either by a default judgment, judgment by agreement of the parties, judgment by the court without a jury, or judgment by the court after a jury verdict was rendered.
>
> There is nothing in this record which even remotely tends to show fraud, collusion or any other improper action on the part of Mrs. Stuart, her counsel, or on the part of Holliman or his counsel. Nor is there anything in the record to indicate that Phoenix sought to intervene in or oppose Mrs. Stuart in her efforts to obtain a judgment against Holliman, the uninsured motorist.
>
> Under the circumstances of this case, we are constrained to the conclusion that the trial court erred in not considering the judgment obtained by Mrs. Stuart in her suit at law against the uninsured motorist, Holliman, as being conclusive of the amount of damages which Mrs. Stuart was entitled to recover from Phoenix

under the uninsured motorist provisions of its policy issued to Mrs. Stuart."

In that case, the consent given in the letter to the insured was broader than that here. It said:

"If you would, please instruct Mr. Turner [counsel for Mrs. Stuart] to go ahead and prepare your case against Mr. Holliman in whatever respects he sees fit because by filing suit against Mr. Holliman you will not waive any of the rights you have under your uninsured motorist coverage of your policy with the Phoenix of Hartford Insurance Company." (289 Ala. 657, 665, 270 So. 2d 792, 799.)

In the instant case, the only consent was to file the suit, not to carry it to completion. Consequently, the court's holding in *Phoenix* was undoubtedly proper. Under the facts in this case we decline to follow its conclusion as to the likelihood of a default judgment being entered with a conclusive effect.

The insurer correctly states that if the request here is construed to be a consent to be bound by a default judgment, then the insurer is faced with a Hobson's choice: (a) it could request that a suit be filed—and thereby imperil an adversary determination of damages should the insured prevail by default judgment; or (b) it could choose not to request a suit to be filed—and thereby impair its subrogation rights if the applicable statute of limitations ran. Such an impairment of the right to arbitration is against the public policy of mandatory arbitration of disputes involving uninsured motorist claims, as expressed by section 143a of the Illinois Insurance Code (Ill. Rev. Stat. 1975, ch. 73, par. 755a).

Until he filed his declaratory judgment suit claiming that the default judgment was conclusive, there is nothing in the record to indicate that the insured did not intend to proceed with the arbitration he had requested.

Accordingly, as to count I, the order of the trial court granting the insured's motion for judgment on the pleadings and denying the insurer's motion for summary judgment is reversed and the cause is remanded to the trial court with directions that the parties proceed with arbitration, which is limited by the terms of the policy to the issues of liability of the uninsured motorist and the amount of damages.

Insurer argues that the summary judgment for medical payments and personal injury protection entered on count II in favor of the insured should be reversed. We disagree.

The purpose of the uninsured motor vehicle statute (Ill. Rev. Stat. 1975, ch. 73, par. 755a) is:

" ' * * * to place the policyholder in substantially the same position he would occupy, so far as his being injured or killed is

concerned, if the wrongful driver had the minimum liability insurance required by the Financial Responsibility Act.' " (*Cole v. Shanior* (1979), 69 Ill. App. 3d 505, 506-07, 387 N.E.2d 860.)

See also *Menke v. Country Mutual Insurance Co.* (1980), 78 Ill. 2d 420, 425, 401 N.E.2d 539; *Squire v. Economy Fire & Casualty Co.* (1977), 69 Ill. 2d 167, 176, 370 N.E.2d 1044; *Ullman v. Wolverine Insurance Co.* (1970), 48 Ill. 2d 1, 4, 269 N.E.2d 295.

At the time of the accident here, the minimum liability insurance required by the Financial Responsibility Act was $10,000 for each person injured, up to $20,000 for each accident. Ill. Rev. Stat. 1975, ch. 95½, par. 7—203.

Where the damages proved against the uninsured motorist are less than $10,000, to allow recoveries under the medical payments and personal injury protections of the policy which would duplicate damages proved upon arbitration of the damages caused by the uninsured motorist would permit a double recovery in violation of the purpose of the uninsured motorist statute. *Glidden v. Farmers Automobile Insurance Association* (1974), 57 Ill. 2d 330, 312 N.E.2d 247 (payments under the medical coverage); *Hoel v. Crum & Forster Insurance Co.* (1977), 51 Ill. App. 3d 624, 366 N.E.2d 901 (payments under the personal injury protection coverage).

■■ We, therefore, do not reverse the summary judgment on count II. On arbitration, if plaintiff's damages suffered because of the uninsured motorist are less than the $10,000 minimum liability insurance required by the Financial Responsibility Act and if the insurer so requests (see *Cole v. Inland National Insurance Co.* (1971), 133 Ill. App. 2d 745, 273 N.E.2d 65, *leave to appeal denied* (1971), 48 Ill. 2d 593), any of those damages which duplicate in kind the recoveries in the summary judgment must be reduced to the extent of those recoveries. In this manner, plaintiff will receive the protection provided by the uninsured motorist vehicle statute, *i.e.*, the amount actually proved against the uninsured motorist within the $10,000 limit.

The order of the circuit court of Cook County of June 4, 1980, as to count I granting the motion of the insured, Michael Feerer, for judgment on the pleadings and denying the motion of the insurer, North River Insurance Company, for summary judgment is reversed. The summary judgment of September 24, 1980, for the insured, Michael Feerer, on count II is affirmed. The cause is remanded with directions that the insured and insurer proceed with arbitration in accordance with the views herein expressed.

Affirmed in part and reversed in part and remanded with directions.

GOLDBERG and McGLOON, JJ., concur.